James M. Herndon and Dorothy E. Herndon, et al. [1] v. Commissioner. Herndon v. Commissioner
Docket Nos. 90470-90475, 90484, 90504, 90530, 94147. Memo. 1962-184.
United States Tax Court
T.C. Memo 1962-184; 1962 Tax Ct. Memo LEXIS 125; 21 T.C.M. (CCH) 1013; T.C.M. (RIA) 62184; August 3, 1962
*125 William H. Kinsey, Esq., Board of Trade Bldg., Portland, Ore., for the petitioners. Aaron S. Resnik, Esq., and Donald G. Daiker, Esq., for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: The Commissioner determined deficiencies in the petitioners' income taxes, as follows: Docket
Deficiency
No.
Petitioners
1957
1958
90470
James M. Herndon and Dorothy E. Herndon
$248.23
$358.29
90471
A. L. Lukens and Evelyn A. Lukens
413.67
514.95
90472
John W. McGee and Mary B. McGee
72.55
119.91
90473
Wm. F. Meyer and Mary J. Meyer
487.35
511.88
90474
James E. Selder and Marie Selder
281.33
383.23
90475
Joseph R. Weis and Eva L. Weis
72.25
122.46
Docket
Deficiency
No.
Petitioners
1957
1958
90484
James M. Bailey and Florence G. Bailey
$ 30.80
$ 56.87
90504
Dewayne S. Cable and Lucille C. Cable
29.90
59.39
90530
Glenn F. Schneider and Luella Schneider
84.92
142.48
94147
Gayle S. Hunt and Helen Hunt
72.26
140.52
The petitioners have not contested some of the adjustments made by the Commissioner. The only issue for decision is whether the petitioners are *126 entitled to deduct on their partnership returns a portion of sums paid for the purchase of two accounting practices. Findings of Fact Some of the facts are stipulated and are found as stipulated. The petitioners in each of these proceedings are husband and wife. All of the petitioners, except those at Docket No. 94147, filed their joint Federal income tax returns for the years involved with the district director of internal revenue for the district of Oregon. The petitioners at Docket No. 94147 filed their joint Federal income tax returns for the years involved with the district director of internal revenue, San Francisco, California. The wives have been made parties solely because of their participation in joint returns; thus, whenever the term "petitioners" is used it will refer to the husbands. All of the petitioners were, during the taxable years involved, partners engaged in an accounting practice under the name Yergen & Meyer, Certified Public Accountants. This firm maintained offices in several cities on the West Coast. In 1956 the petitioners were interested in opening offices in areas other than the ones they were then serving. In order to do this, they began negotiations *127 with a view to purchasing the accounting practice of Ian T. Allison. Allison's practice was relatively small, involving about $35,000 in billings annually. His only employees were three girls who posted his clients' ledgers by using a Burroughs general ledger machine. In addition to the clients for whom Allison did only tax work, there were approximately 50 clients for whom he maintained records on a regular basis. The monthly transaction records of these latter clients would be either brought to one of Allison's offices or picked up by him monthly. Beginning in 1954 Allison maintained his primary office in Willits, California. Prior to that time he had purchased a small practice in Laytonville, California, and obtained a few clients in Santa Rosa, California. In 1954 he purchased a practice in Willits. Thereafter he maintained offices in Laytonville and Santa Rosa for contact with clients, but all of his work was done at the Willits office. On July 25, 1956, the petitioners' partnership entered into an agreement with Allison for the purchase of his practice for $35,000. This agreement did not cover the sale of the physical assets of the business. The agreement valued the goodwill *128 of the business at $1,000. In addition, it contained a covenant by Allison not to compete with the petitioners in the county of Mendocino, California, for five years from the date of the agreement and in Sonoma County, California, for one year from that date. It also provided for liquidated damages of $10 per hour for any breach of the covenant not to compete. Two of the members of the petitioners' partnership negotiated the agreement with Allison, subject to the approval of petitioner Meyer. The valuation of "goodwill" at $1,000 was placed in the agreement at the instance of the petitioners' representatives. Allison did not object to this provision. The petitioners, on their partnership returns, claimed deductions of $5,526.18 in 1957 and $5,101.56 in 1958 as amortization of the covenant not to compete acquired under the agreement for the purchase of Allison's practice. The Commissioner disallowed these deductions. As of December 1, 1957, the petitioners purchased an accounting practice that had been conducted by Herbert E. Griswold from Zula E. Griswold, the executrix of his estate. Griswold had been a personal friend of petitioner Meyer. Thus, when Griswold died late in 1957, *129 his wife, Zula, despite the fact she had received several offers for the purchase of her husband's practice, asked Meyer whether his firm was interested in purchasing the business. Griswold's practice was not of the type generally sought by the petitioners because it included a large number of small tax and bookkeeping accounts. Nevertheless, Griswold had served a few clients in whom the petitioners were interested and whom they hoped would bring other desirable business to them. Therefore, the petitioners purchased the Griswold practice as of December 1, 1957. The agreement under which this sale was effected did not delineate with any particularity the specific assets which were to be included in the sale of the business; it indicated only that the business, together with all office equipment, was to be sold to the petitioners. The petitioners agreed to continue business in Griswold's office at least until the completion of the "tax work period" in early 1958 and to assign a partner to that office on a full-time basis. They agreed to pay $2,000 for the office equipment, furniture and supplies of the business. All payments received for work done prior to the effective date of the *130 sale were to belong to the seller. The seller was also to receive 25 percent of the gross fees charged for work done for clients of the Griswold practice during a period of 24 months after the effective date of the sale. The petitioners on their 1958 partnership income tax return deducted $3,349.34 paid in 1958 to Zula Griswold under the sales agreement. The respondent disallowed this deduction. Allison's covenant not to compete is severable from the goodwill of the practice. Eleven thousand dollars was paid for this covenant. Of this sum $1,000 is allocable to the agreement for the county of Sonoma and $10,000 to the agreement for the county of Mendocino. Opinion The first question is whether the petitioners are entitled to amortize on their partnership returns any portion of the sum paid for the purchase of Allison's practice. The petitioners contend that the covenant not to compete is severable from the goodwill acquired in the purchase of Allison's practice and that the covenant should be valued for tax purposes at $34,000. The respondent, on the other hand, asserts that the covenant cannot be considered as severable from the goodwill of the business acquired by the petitioners *131 and that the petitioners are not entitled to amortize any of the sum paid Allison. Where a business is purchased and the seller gives a covenant not to compete which is not severable from the goodwill of the business transferred, the purchaser is not entitled to deduct any amount on account of the covenant. , affd. per curiam (C.A. 6, 1950), certiorari denied . If, however, the covenant is severable from the goodwill of the business, the amount paid for the covenant may be amortized by the purchaser over the period of the covenant. . The careful language and specific provisions of the covenant are not in the agreement by chance and it can scarcely be doubted that the covenant not to compete was made separately and bargained for separately, at least as to its terms and in all probability as to its price. This is sufficient. As we said in , at page 19: If such an agreement can be segregated, not so much for purposes of valuation as in order to be assured that a separate item *132 has actually been dealt with, the agreement is ordinary income and not the sale of a capital asset. * * * Upon consideration of the entire record, we believe that the covenant not to compete was important, meaningful and valuable for business reasons, and therefore we have found that the covenant not to compete is severable from the goodwill of the practice sold. A fact also present is that the goodwill of the business was specifically valued by the parties in the contract of sale at $1,000. See , appeal dismissed (C.A. 10, 1950). Allocations of a purchase price made by the parties to a sales contract are evidence of the value of items sold. If, however, these allocations are unreasonable, the courts are not bound by them. , affd. (C.A. 4, 1960), certiorari denied . The evidence shows that the goodwill sold by Allison had a value greatly in excess of the $1,000 assigned to it in the contract. It also demonstrates that Allison's covenant not to compete had substantial *133 value. Since the petitioners seek a deduction based on the value of this covenant, they have the burden of establishing its worth. They have not produced evidence which fixes its value with any certainty. We think, however, that applying the principles announced in (C.A. 2, 1930), the record supports an appropriate allocation, resolving any doubts against petitioners, who bear the burden of proof. Thus, we have allocated $11,000 to the covenant not to compete, of which $1,000 pertains to the agreement for the county of Sonoma and $10,000 to that for the county of Mendocino. The second question is whether the petitioners on their partnership return for 1958 are entitled to deduct the sum paid in 1958 for the purchase of the Griswold practice. The petitioners contend that in purchasing the Griswold practice they were not purchasing any goodwill and that they are entitled to depreciate or amortize any asset except goodwill. We cannot agree with either of these propositions. The agreement for the purchase of the Griswold practice provided for the sale of the entire business. Payment for the physical assets was provided for separately in *134 the agreement, and that sum is not in issue. Certainly the business must have included some elements of goodwill. The mere fact that the petitioners' success in retaining clients in the future would depend to a large extent on their own performance does not negate the transfer of goodwill. Furthermore, not every asset other than goodwill is subject to amortization or depreciation. Only assets whose usefulness is demonstrably consumed by use or in the passage of time may be written off for tax purposes. The petitioners have the burden of proof in this regard. They have not shown that the sum paid for the Griswold pratice was allocable to any asset with a definite useful life and therefore have not shown that they are entitled to deduct any portion of the sum in issue. Decisions will be entered under Rule 50. Footnotes
1. The proceedings of the following petitioners are consolidated herewith: A. L. Lukens and Evelyn A. Lukens, Docket No. 90471; John W. McGee and Mary B. McGee, Docket No. 90472; Wm. F. Meyer and Mary J. Meyer, Docket No. 90473; James E. Selder and Marie Selder, Docket No. 90474; Joseph R. Weis and Eva L. Weis, Docket No. 90475; James M. Bailey and Florence G. Bailey, Docket No. 90484; Dewayne S. Cable and Lucille C. Cable, Docket No. 90504; Glenn F. Schneider and Luella Schneider, Docket No. 90530; and Gayle S. Hunt and Helen Hunt, Docket No. 94147.↩